IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| RICHARD PATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 1:22-cv-21585-BLOOM/ Otazo-Reyes |
| v. | ) |
| | ) |
| VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a Audi of America, Inc., a Foreign corporation. | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant Volkswagen Group of America, Inc., by and through undersigned counsel and pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves this Court for an Order dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted and, in support hereof, states as follows.

**INTRODUCTION**

The Complaint purports to state claims for products liability arising out of injuries allegedly sustained by Plaintiff in connection with the design, manufacture, and lease of a 2021 Audi Q8 sports-utility vehicle that he was driving on March 28, 2021. *See* Compl. ¶¶ 10-12, 24. Plaintiff alleges that his Audi Q8 was equipped with Audi's pre sense® rear technology which assists drivers to detect hazards. *See* Compl. ¶¶ 13-14. When the pre sense® rear technology interprets an imminent hazard, it can prentension, i.e., "tighten," the front safety belt as a safety mechanism to brace for a potential impact.

Plaintiff alleges while he was stopped at stoplight leaning forward with both hands on top of the steering wheel, two bicyclists approached the vehicle quickly from the rear and then passed

by his Audi Q8 on each side which caused his safety belt to tighten. Plaintiff alleges that the tightening of the safety belt somehow crushed his chest resulting in a collapsed lung, multiple hospitalizations, surgeries and complications. *See* Compl. ¶¶ 11 and 12. Plaintiff alleges these two cyclists somehow triggered the pre sense® rear technology to pretension his safety belt. *See* Compl. ¶ 15.

Plaintiff generically asserts two counts arising out of this allegation: (1) strict liability and (2) negligence. Each count improperly commingles theories of design defect and failure to warn with theories of so-called manufacturing defect. While the Complaint purports to assert a manufacturing defect claim, Plaintiff fails to identify any actual manufacturing defect. Plaintiff's negligence claim and strict liability claim are deficient for this same reason. Accordingly, as discussed more fully below, this Court should dismiss Plaintiff's Complaint in its entirety.

## STANDARDS OF LAW

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A complaint must contain "more than labels or conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F. 3d 1250, 1262 (11th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson*, 372 F. 3d at 1262. Moreover, in adjudicating a motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court should evaluate well-pleaded factual allegations to determine whether "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When a complaint fails to "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" then "'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 557, 558 (internal citations omitted). A court thus should insist upon specificity in pleading before allowing potentially massive discovery to proceed. *Id.* Discovery is for finding "details" of a case, not for trying to create a case. *Id.* at 560 n.6. Accordingly, it is critical at the pleading stage to require a heightened "plausibility standard," lest discovery abuse run unchecked. *Id.* at 559.

## ARGUMENT

Plaintiff bases his strict liability and negligence claims upon theories of manufacturing defect, design defect, and failure to warn.[1] *See generally* Compl.  In his Complaint, Plaintiff attempts to plead both negligent and strict liability manufacturing defect claims. *See* Compl. ¶¶ 22, 24, 31, 33. However, Plaintiff does not allege a single fact that identifies a specific manufacturing defect.  Rather, the Complaint only contains insufficient conclusory statements that the Audi Q8's "systems" in general and its pre sense® rear technology was "defective and unreasonable dangerous" and "failed to use due care in the manufacturing and assembly" due to unidentified manufacturing defects. *See* Compl. ¶¶ 24(h)-(k) and 33(f)-(g). There are simply no factual allegations whatsoever to support that there was a manufacturing defect in the subject Audi Q8.

Plaintiff's manufacturing defects claims should be dismissed because Plaintiff has failed to plead that his Audi Q8 suffered from a manufacturing defect. Under Florida law, a manufacturing defect occurs where a product "'does not conform to its intended design.'" *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1363 (M.D. Fla. 2011) (quoting Fla. Std. Jury Instr. (Civil) Prods. Liab. 403.7(a)); *Ford Motor Co. v. Hill*, 404 So. 2d 1049, 1051 (Fla. 1981) (distinguishing manufacturing defects "where products do not conform to planned specifications due to manufacturing error" from design defects "where products are produced as

---

[1] Plaintiff comingles his strict liability and negligence theories. From the Complaint, it is unclear what Plaintiff specifically alleges is the design defect, the manufacturing defect, and/or separately the failure-to-warn defect. Rule 8(a) requires "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Plaintiff should be required to file a complaint containing specific allegations of its wrongdoing separated into individual counts. The Eleventh Circuit has held "not separating into a different count each cause of action or claim for relief" is improper. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1321023 (11th Cir. 2015).

designed but the design itself is defective"). In Florida, to state a claim for a strict liability manufacturing defect, three elements must be plead: (1) relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous and (3) causation between the defect and the harm suffered by the user. *See Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999).

Failure to allege these ultimate facts in a complaint routinely results in dismissal of manufacturing defect claims. *See Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (dismissing design and manufacturing defect claims where plaintiff alleged only that defendants' drugs were "'defectively designed and/or manufactured'" but did not plead "factual allegations suggesting what was in fact defective about the products"); *Bailey v. Janssen Pharmaceutica, Inc.*, No. 06-80702 CIV, 2006 WL 3665417 (S.D. Fla. Nov. 14, 2006) (dismissing manufacturing defect claim where the complaint failed to "mention how, if at all, the [fentanyl] patch was defective nor did it connect a potential defect to the product's . . . manufacturing process." ); *Rice v. Walker*, 359 So. 2d 891, 892 (Fla. 3d DCA 1978) (dismissing manufacturing defect claim where plaintiff alleged neither "the facts constituting such defects" nor "facts showing how, as made, any [product] components were defective or dangerous to the user, or how they reasonably could or should have been made safe").

Here, Plaintiff does not allege a single defect in the manufacture of his Audi Q8. Notably absent from Plaintiff's Complaint is any *factual* showing as to (1) the precise design specifications of Plaintiff's Audi Q8; (2) how Plaintiff's Audi Q8 deviated from its intended design; and (3) how such alleged deviation caused Plaintiff's alleged injuries. *See generally* Compl. Further, Plaintiff fails to specifically plead what it is he actually believes is defective with the manufacturing of his Audi Q8. *See* Compl. ¶ 24 ("The systems inside the SUV, including the Audi pre sense® rear

technology"). Rather, Plaintiff merely recites an alleged manufacturing defect claim in conclusory fashion:

- Audi failed to use due care in the manufacturing and assembly of the SUV;

- Audi failed to use due care in the manufacturing and assembly of the pre sense® rear technology;

- Audi failed to implement effective quality control procedures to ensure that the systems in the SUV, including the pre sense® rear technology, were manufactured and assembled in a safe manner; and

- Audi failed to implement effective quality control procedures to ensure that the systems in the SUV, including the pre sense® rear technology, functioned as intended and provided occupants with reasonable safety in foreseeable situations.

*See* Compl. ¶¶ 24, 24(h)-(k) and 33(f)-(g).

Plaintiff's manufacturing defect claims fall far short, with Plaintiff saying nothing more than the subject Audi Q8 "was defective and unreasonably dangerous," in part, due to a failure of due care in the manufacturing and assembly of the vehicle. Nowhere does Plaintiff specify what went wrong in the manufacturing process that caused a defect that led to his injuries. Plaintiff does not give the ultimate facts necessary. *See Merino v. Ethicon Inc.,* 536 F.Supp.3d 1271, 1283 (S.D. Fla. 2021) (dismissing strict liability manufacturing defect claim where plaintiff did not allege how the product deviated from the design and manufacturing specifications.); *Anderson v. Johnson,* 2021 WL 3622397, *6 (M.D. Fla. Aug. 16, 2021) (dismissing a manufacturing defect claim because plaintiff failed to allege how defendant deviated from its own manufacturing specifications). Plaintiff has chosen to proceed under the bald assumption that because Plaintiff drove his Audi Q8 and its pre sense® rear technology allegedly engaged and he allegedly suffered

an injury, it must have been caused by a defect in the vehicle. It is also unclear from the Complaint if Plaintiff believes all "systems" had a manufacturing defect or only its pre sense® rear technology. This overly simplistic, attenuated and ill-defined theory of correlation does not amount to causation in the products liability context under Florida law, and is utterly insufficient to state a claim for strict liability manufacturing defect.

Rule 8 requires "more than labels or conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." *Twombly*, 550 U.S. at 555. Because the Complaint fails to identify a manufacturing defect and tie the defect to the Plaintiff's injury, Plaintiff has failed to satisfy these fundamental pleading requirements. As such, Plaintiff's manufacturing defect claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiff's claims against Volkswagen Group of America, Inc., in their entirety.

Dated: May 31, 2022

Respectfully submitted,

*/s/ William P. Geraghty*
WILLIAM P. GERAGHTY
Florida Bar No.: 89508
MATTHEW D. BERNSTEIN
Florida Bar No.: 92260
SHOOK, HARDY & BACON L.L.P.
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone:    (305) 358-5171
Facsimile:    (305) 358-7470
Email: wgeraghty@shb.com
Email: mbernstein@shb.com

**Attorneys for Volkswagen Group of America, Inc.**