UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-21585-BLOOM/Otazo-Reyes**

RICHARD PATT,

      Plaintiff,

v.

VOLKSWAGEN GROUP OF AMERICA,
INC. d/b/a Audi of America, Inc., and
AUDI AG,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss, ECF No. [43] ("Motion"), filed by Defendant Audi Aktiengesellschaft ("Audi" or "Audi AG") on June 13, 2023. Plaintiff Richard Patt ("Patt") filed a Response in Opposition, ECF No. [47], to which Audi filed a Reply, ECF No. [48]. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss, ECF No. [43], is denied.

## I.    BACKGROUND

This action arises from injuries Patt allegedly suffered on March 28, 2021, while driving an Audi SUV in Miami, Florida. ECF No. [33] ¶¶ 11. Patt leased the vehicle several months prior from an Audi dealership in California. *Id.* ¶ 10.

Patt alleges that he was waiting at a stoplight when his seatbelt tightened, pulled him back, crushed his chest, and caused him to suffer a collapsed lung. *Id*. ¶ 12. He claims that the cause of the seatbelt tightening was Audi's "pre sense® rear technology," which is designed to detect impending rear-end collisions and initiate preventive measures to protect occupants from injury.

*Id*. ¶ 13-16. He asserts that the pre sense® technology is defective and it was "falsely triggered" by bicyclists who passed near the vehicle. *Id.* ¶ 16.

Patt asserts one count of Strict Products liability against Audi and Volkswagen Group of America, Inc. ("VWGoA") (Count I), and separate counts of Negligence against Audi (Count II) and VWGoA (Count III).

Audi brings the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2). ECF No. [43]. Audi asserts that Patt cannot establish personal jurisdiction over Audi because (1) Audi's conduct does not fall within the scope of Florida's long-arm statute, and (2) Audi lacks "minimum contacts" with Florida such that exercising personal jurisdiction over Audi would violate the Due Process Clause of the Fourteenth Amendment. *See generally* ECF No. [43].

In support of its Motion, Audi attached the affidavit of Sefan Eibl ("Eibl"), a "product analysis expert" employed by Audi in Germany. ECF No. [43-1] ¶¶ 1-2. Eibl asserts that Audi is a German company with its principal place of business in Germany. *Id*. ¶ 3. It is not registered to do business in Florida and has no registered agent in this state. *Id*. ¶¶ 13, 15. Audi has no offices or facilities in Florida, does not own real estate in Florida, and does not have employees in Florida. *Id*. ¶ 14. Audi designed and manufactured the Audi SUV outside of the United States, and Audi does not design or manufacture vehicles specially for the Florida market. *Id*. ¶¶ 4, 12.

According to Eibl, Audi does not directly sell vehicles in the United States or control any distribution or marketing for Audi vehicles in this country. *Id*. ¶ 9. Rather, Audi sells its vehicles to VWGoA, which purchases them in Germany. *Id.* ¶ 10. "VWGoA then has complete and exclusive decision-making authority, control, discretion, and oversight concerning which of those vehicles will be delivered in Florida, marketed in Florida, or sold to Florida dealerships." *Id*. "Audi AG has neither authority nor control over VWGoA's decisions regarding which of those vehicles VWGoA will deliver to, market in, or sell in Florida." *Id.*

Patt responds that the Court may exercise personal jurisdiction over Audi because Audi designed and manufactured the vehicle Patt was driving, and Audi both conducts business in Florida and targets Florida customers. ECF No. [47]. Patt submitted nine exhibits in support of his response to establish that Audi [AG] "maintains a network of dealerships and service centers in Florida, of which there are least a dozen, including in Miami-Dade County." *Id*. at 5; *see* ECF Nos. [47-1]–[47-9].

## II.  LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id*. (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id*. (citations omitted). The reach of Florida's long-arm statute is a question of Florida state law, so the Court must construe that statute "as would the Florida Supreme Court." *Meier*, 288 F.3d at 1271 (quotation marks omitted). "Absent some indication that the Florida Supreme Court would hold otherwise," the Court must "adhere to decisions of its intermediate courts." *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 627 (11th Cir. 1996) (citation omitted).

### III. DISCUSSION

#### A. Florida's Long Arm Statute

Florida's long-arm statute recognizes two kinds of personal jurisdiction over a non-resident defendant: general jurisdiction and specific jurisdiction. Fla. Stat. §§ 48.193(1)-(2). Here, Patt solely alleges that specific jurisdiction exists under § 48.193(1)(a), which provides, in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> . . .
>
> 6.  Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
>     a.  The defendant was engaged in solicitation or service activities within this state; or
>
>     b.  Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

*Id.* § 48.193(1)(a). Patt asserts that jurisdiction exists under both § 48.193(1)(a)1, the "doing business" provision, and § 48.193(1)(a)6, the "products liability" provision. Audi AG argues that neither provision applies because Audi does not conduct business in Florida and it does not specifically target Florida consumers.

#### 1. Fla. Stat. § 48.193(1)(a)1

The "doing business" provision applies when a defendant operates, conducts, engages in, or carries on "a business or business venture" or has "an office or agency in" Florida. Fla. Stat. § 48.193(1)(a)1. Patt's First Amended Complaint contains numerous allegations that Audi does

business in Florida: "Audi has been authorized to do business in the State of Florida or was transacting or conducting business in the State of Florida. Audi does business in Florida by and through subsidiaries including Audi of America, Inc. registered in Broward County." ECF No. [33] ¶ 7.

Audi contests Patt's allegations through Eibl's sworn affidavit. ECF No. [43-1] ¶¶ 1-2. Eibl asserts that Audi is not registered to do business and has no registered agent in Florida. *Id*. ¶¶ 13, 15. He further asserts that VWGoA, which *does* do business in Florida, "is a separate, distinct, and independent corporate business entity from Audi AG." *Id*. ¶ 5. All sales, marketing, and distribution of Audi vehicles in the United States are conducted by VWGoA, not Audi. *Id*. ¶ 10. Audi argues that "'[i]t is well established that as long as' businesses 'are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." ECF No. [43] at 6 (quoting *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000)).

Patt responds in two ways. First, he asserts that "the facts of Audi's business contacts [with Florida] are discernible from even a quick Google search: Audi, either directly or through an affiliate, extensively advertises within Florida." ECF No. [47] at 5. "Audi maintains a network of dealerships and service centers in Florida, of which there are at least a dozen, including in Miami-Dade County." *Id*. Second, Patt argues that Audi's reliance on *Sherritt* is misplaced because, "where a subsidiary that *is* subject to jurisdiction in Florida is an 'agent' of a foreign defendant, the foreign defendant, too, is subject to jurisdiction." ECF No. [47] at 6 (quoting *Meier*, 288 F.3d at 1275); *see also Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1239 (S.D. Fla. 2021) ("Daimler's utilization of its subsidiary MBUSA to cultivate business in Florida, which included licensing its trademarks to MBUSA as well as to dealerships in the state of Florida, properly subjects Daimler to the jurisdiction of Florida courts.").

Case No. 22-cv-21585-BLOOM/Otazo-Reyes

Audi replies that Plaintiff's evidence "indicates only the ***existence*** of dealerships and service centers in Florida; it does not, in any way, show that Audi AG 'maintains' such dealerships and service centers." ECF No. [48] at 2 (emphasis in the original). Audi asserts that it is VWGoA, also known as "Audi USA," that sells and services Audi's vehicles in Florida. *Id*. at 2-3. Audi additionally argues that there is no causal connection between Audi's or VWGoA's business activities in Florida and Patt's injuries, as required by Fla. Stat. § 48.913(1)(a).

The Court need not resolve the factual issue of whether VWGoA is the "agent" of Audi in Florida. *Meier*, 288 F.3d at 1272. Regardless of how that factual issue is resolved, Fla. Stat. § 48.193(1)(a)1 could not provide a basis for personal jurisdiction because that provision requires "a causal connection between the defendant's activities in Florida and the plaintiff's cause of action." *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, 591 F. Supp. 3d 1232, 1240 (S.D. Fla. 2022) (quotation marks omitted).

Here, as Audi correctly points out, there is no causal connection between Audi's alleged business activity in Florida and Patt's injury. According to Patt's First Amended Complaint, Patt leased the Audi vehicle in California. ECF No. [33] ¶ 10. He does not allege to have serviced it at an Audi or VWGoA service center in Florida. "Although Plaintiff's harm may have arisen from Defendant's activity outside of Florida that was similar to Defendant's activity in Florida, that is not enough." *Kenfred Ents. v. Textron Aviation, Inc.*, No. 6:20-CV-1038, 2021 WL 1020969, at *3 (M.D. Fla. Mar. 17, 2021) (citing *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 550 (11th Cir. 2019) ("[N]o matter how involved [the defendant] may be in the state of Florida, because the [plaintiffs] did not demonstrate a 'direct affiliation, nexus, or substantial connection' between that involvement and their causes of action, specific jurisdiction is not proper.'")). Because a causal connection does not exist between Patt's injury and Audi's (or VWGoA's) activity in Florida, Fla. Stat. § 48.193(1)(a)1 does not provide a basis for personal jurisdiction over Audi.

### 2.   Fla. Stat. § 48.193(1)(a)6

Florida's "products liability" provision applies to defendants who "[c]aus[e] injury to persons or property within this state arising out of an act or omission by the defendant outside of this state, if . . . b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)6. Here, Patt clearly alleges that a component of his vehicle, manufactured by Audi, caused him injury in Miami, Florida. ECF No. [33] ¶¶ 10-14.

Nonetheless, Audi argues that § 48.193(1)(a)6 is not satisfied because Patt fails to allege that Audi "acted in a purposeful manner or with some knowledge that the Subject Vehicle would end up in Florida." ECF No. [43] at 8. "Rather, Plaintiff leased the Subject Vehicle in California and then brought it Florida." *Id*. "Moreover, Audi AG did not design or manufacture the Subject Vehicle specifically for the Florida market or appeal specifically to Florida residents, and Audi AG did not encourage or influence any marketing of the Subject Vehicle in Florida." *Id*.

Patt responds that the "stream of commerce" prong of Florida's long-arm statute is "intended to reach out-of-state manufacturers in products liability actions." ECF No. [47] at 7 (quoting *Mallard v. Aluminum Co. of Canada, Ltd*., 634 F.2d 236, 241 (5th Cir., Jan. 15, 1981)).[1] He argues that "Audi has over a dozen authorized resellers and distributors who do business in Florida, and could certainly anticipate that its vehicles could reach Florida." *Id*. at 8. Moreover, it is immaterial that Patt leased his vehicle in California because the vehicle was indisputably "used . . . within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)6b.

Patt is correct. First, Patt has convincingly demonstrated that there is a network of dealerships and service centers of Audi vehicles in Florida, and substantial marketing for Audi

---

[1] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

vehicles occurs in this state. *See* ECF Nos. [47-2], [47-4]. Whether Audi or VWGoA conducts those activities makes little difference; Audi does not contend it is *unaware* its vehicles are "used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)6b. For that reason, Audi draws no support from *Seascape Phase II Ass'n, Inc. v. Chem. Specialties*, LLC, No. 3:16-CV-115/MCR/CJK, 2017 WL 3597511 (N.D. Fla. July 6, 2017), which involved a defendant wood treater in Georgia that had no "reason to anticipate that the [wood] it treated would be sold outside of Georgia[.]" *Id.* at *4. Audi indisputably knows that a substantial number of its vehicles are marketed and sold in Florida. ECF No. [47-2].

Second, it is immaterial that Patt leased the vehicle in California rather than in Florida. Unlike the "doing business" prong of Florida's long arm statute, which requires a causal connection between the defendant's activities in Florida and the plaintiff's injury, the "products liability" prong has no such requirement. *Cf. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (rejecting a "strict causal relationship between the defendant's in-state activity and the litigation"). Therefore, "[w]here, for example, a car has been repaired out-of-state and some time later the repairs fail during an in-state sojourn causing injury, personal jurisdiction over the out-of-state repairman is concededly present under this statute." *Mallard*, 634 F.2d at 241; *see, e.g.*, *Murante v. Pedro Land, Inc.*, 761 F. Supp. 786, 789 (1991) (applying the products liability provision when defendants sold fireworks in South Carolina, a consumer transported them to Florida, and injury occurred in Florida).

The cases cited by Audi are inapposite. Audi is not like the Georgian pharmacist in *Dunn v. Upjohn Co.*, 350 So. 2d 127, 129 (Fla. 1st DCA 1977), who sold a prescription drug to a Floridian in Georgia but had never conducted or solicited business in Florida. *Id.* at 128. Nor is Audi analogous to the North Carolinian dealer in *Jack Pickard Doge, Inc. v. Yarbrough*, 352 So. 2d 130 (Fla. 1st DCA 1977), whose "only connection with Florida is the servicing of an automobile

which eventually is possessed by the plaintiffs." *Id.* at 133. Patt is not suing the dealer in California that leased him the vehicle; he is suing the company that designed and manufactured the vehicle, knowing that a substantial number of its vehicles would be sold in Florida. ECF No. [47-2].

Accordingly, the "products liability" prong of Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)6, authorizes jurisdiction over Audi.

## B. The Due Process Clause

Next, Audi asserts that exercising jurisdiction over it would violate the Due Process Clause. Audi asserts that it cannot be subject to personal jurisdiction of Florida courts because "there are no allegations here that Audi AG targeted Florida." ECF No. [43] at 9. According to Audi, it "does nothing more than place vehicles, including the Subject Vehicle, into the stream of commerce ***in Germany***, with the awareness that the vehicles could end up ***somewhere*** in the United States." ECF No. [43] at 10 (emphasis in the original). Audi argues that a plaintiff must allege "'something more' to establish purposeful contacts." *Id.* (citing, *inter alia, Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1140 (S.D. Fla. 2019)). Audi additionally argues that "exercising personal jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 10.

Patt accurately responds that Audi's Due Process argument "is foreclosed by binding precedent, including the United States Supreme Court's Decision in *Ford*." ECF No. [47] at 9. Indeed, the Supreme Court has repeatedly stated that *this very defendant* is subject to specific personal jurisdiction in this type of products liability case. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), the Supreme Court explained:

> [I]f the sale of a product of a manufacturer or distributor ***such as Audi or Volkswagen*** is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 297 (emphasis added). The Due Process Clause is not violated when a forum state "asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298. In 2021, the Supreme Court again described "the Audi/Volkswagen scenario as a paradigm case of specific jurisdiction." *Ford*, 141 S. Ct. at 1027-28.

Audi replies that *Ford* did not precisely address the present situation because "[t]he defendant in *Ford* (notably, a domestic manufacturer) conceded it had purposeful contacts with the forum states." ECF No. [48] at 8. Here, by contrast, "Audi AG is asserting it lacks purposeful contacts with Florida in the first place." *Id.* at 8. This argument is without merit. The Supreme Court in *Ford* reiterated that personal jurisdiction is conferred over a manufacturer that "serve[s], directly or indirectly, the market" in the forum state. *Ford*, 141 S. Ct. at 1027 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). It is indisputable that Audi at least "indirectly" serves the market of Florida. *Id.* Thus, regardless of whether VWGoA acts as Audi's agent, subsidiary, intermediary, or, as Audi asserts, a "separate, distinct, and independent corporate entit[y]," ECF No. [43] at 6, the fact remains that Audi has "systematically served a market in" Florida for the type of vehicle Patt was driving. *Ford*, 141 S. Ct. at 1028; *see also Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1239 (S.D. Fla. 2021) ("Although the Court recognizes that Daimler and MBUSA are legally separate entities, this does not insulate Daimler from a finding that it has purposefully availed itself of the privileges and responsibilities of conducting business in Florida.").

Contrary to Audi's argument, Patt's First Amended Complaint alleges "something more" than the fact that Audi places its vehicles into the stream of commerce in Germany. No. [43] at 10. Patt alleges that "Audi does business in Florida by and through subsidiaries including Audi of America, Inc. registered in Broward County." ECF No. [33] ¶ 7. In response to Audi's Motion,

Patt has introduced uncontroverted evidence of an extensive network of dealerships and service centers in Florida that sell and service Audi vehicles. *See* ECF No. [47-2]. Because Audi has "systematically served a market in" Florida, *Ford*, 141 S. Ct. at 1028, either directly or indirectly, Audi does not avoid Florida's jurisdiction merely because VWGoA directly runs those entities.

As Patt correctly points out, if Audi's argument prevails, then Audi would be "susceptible to jurisdiction only in Germany," and no plaintiff anywhere in the United States would be able to bring a products liability suit against it. ECF No. [47] at 2. *Cf. Lewis*, 530 F. Supp. 3d at 1239 ("If not Florida, what market does [the defendant car manufacturer] serve?"). Given that Audi and not VWGoA designed and manufactured Patt's vehicle, ECF No. [43-1] ¶ 4, the practical effect of accepting Audi's argument would be that a global manufacturer (like Audi) could insulate itself from liability for the design and manufacture of its products by creating a separate corporate entity (like VWGoA) that handles all marketing and distribution abroad. Such a result would run contrary to the public interest and several decades of Supreme Court jurisprudence. *See Ford*, 141 S. Ct. at 1027 (explaining why personal jurisdiction extends to a manufacturer that "serve[s], directly or indirectly, the market for its product" in the forum state (quoting *World-Wide Volkswagen*, 444 U.S. at 297)).

Finally, Audi has failed to show that exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. Audi has not demonstrated that litigating in Florida imposes a significant burden on Audi, and Florida "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Lewis*, 530 F. Supp. 3d at 1240 (quotation marks omitted). In repeatedly invoking "the Audi/Volkswagen scenario as a paradigm case of specific jurisdiction," *Ford*, 141 S. Ct. at 1027-28, the Supreme Court has left no doubt that exercising jurisdiction over Audi in this case would not offend traditional notions of fair play and substantial justice.

Case No. 22-cv-21585-BLOOM/Otazo-Reyes

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Audi's Motion to Dismiss, **ECF No. [43]**, is **DENIED.**

2.  Audi shall file an Answer to Patt's First Amended Complaint, ECF No. [33], on or

    before **August 25, 2023**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 14, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record