UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-21585-BLOOM/Otazo-Reyes**

RICHARD PATT,

    Plaintiff,

v.

VOLKSWAGEN GROUP OF AMERICA,
INC. d/b/a AUDIO OF AMERICA, INC.,
*a Foreign corporation,*

    Defendant.

_____/

## ORDER ON MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

**THIS CAUSE** is before the Court upon Defendant Audi AG's ("Defendant Audi") Motion to Amend the Court's August 15, 2023 Order to Include a Certification for Interlocutory Appeal, ECF No. [61] ("Motion"). Plaintiff Richard Patt ("Plaintiff") filed a Response in Opposition, ECF No. [62], to which Defendant Audi filed a Reply, ECF No. [63]. The Court has reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, Defendant Audi's Motion is denied.

**I. BACKGROUND**

This action arises from injuries Plaintiff allegedly suffered on March 28, 2021, while driving an Audi SUV in Miami, Florida. ECF No. [33] ¶ 11. Plaintiff leased the vehicle several months prior from an Audi dealership in California. *Id.* ¶ 10. Plaintiff alleges that he was waiting at a stoplight when his seatbelt tightened, pulled him back, crushed his chest, and caused him to suffer a collapsed lung. *Id.* ¶ 12. Plaintiff claims that the cause of the seatbelt tightening was

Case No. 22-cv-21585-BLOOM/Otazo-Reyes

Defendant Audi's "pre sense® rear technology," which is designed to detect impending rear-end collisions and initiate preventive measures to protect occupants from injury. *Id.* ¶¶ 13-16.

Plaintiff asserts one count of Strict Products Liability against Defendants Audi and Volkswagen Group of America, Inc. ("VWGoA") (Count I), and separate counts of Negligence against Defendant Audi (Count II) and Defendant VWGoA (Count III). Defendant Audi filed its Motion to Dismiss Amended Complaint, ECF No. [43], arguing that Plaintiff could not establish personal jurisdiction over Defendant Audi because (1) Defendant Audi's conduct does not fall within the scope of Florida's long-arm statute, and (2) Defendant Audi lacks "minimum contacts" with Florida such that exercising personal jurisdiction over Defendant Audi would violate the Due Process Clause of the Fourteenth Amendment. *See generally* ECF No. [43].

The Court thereafter issued an Order Denying Motion to Dismiss Amended Complaint, ECF No. [57] ("Order"). The Court determined that exercising personal jurisdiction over Defendant Audi was proper under the products liability prong of Florida's long-arm statute. The Court also found that exercising personal jurisdiction over Defendant Audi was consistent with the Due Process Clause because Defendant Audi has sufficient minimum contacts with the Florida market.

Shortly thereafter, on August 28, 2023, Defendant Audi filed its Motion for Interlocutory Appeal, which requests that this Court certify the following questions for interlocutory appeal:

1. Whether § 48.193(1)(a)(6) of Florida's long-arm statute "requires a causal connection between a defendant's contacts with Florida and the plaintiff's injury as a prerequisite for exercising specific jurisdiction[,]"; and

2. "[W]hether a court can consider the conduct of an independent U.S. distributor to determine that the exercise of specific jurisdiction over a foreign manufacturer comports with due process."

Motion at 1-2.

## II. LEGAL STANDARD

Three elements are required to certify a question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

(1) a controlling question of law;
(2) over which there is a substantial ground for difference of opinion among courts; and
(3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation.

*See* 28 U.S.C. § 1292(b). Interlocutory appeals under § 1292(b) serve as a "rare exception" to the general rule that final judgment must precede appellate review. *McFarlin v. Canseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004). Further, the Court of Appeals for the Eleventh Circuit considers liberal use of § 1292(b) to be bad policy, as it may promote piecemeal appeals. *Id.* at 1259. Accordingly, § 1292(b) certification is only proper "in exceptional cases where decision of the appeal may avoid protracted and expensive litigation … where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *Id.* at 1256.

The first element requires a showing that the question involves a controlling question of law. This element requires demonstrating the following:

> A "controlling question of law" arises where the appellate court can rule on a controlling question of pure law without having to search deep into the record in order to discern the facts of the underlying case. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252-53 (11th Cir. 2003). To meet the first element for interlocutory appeal, the movant must demonstrate there is a question of law, and it is controlling. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). A controlling question of law pertains to "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* at 1258. In other words, a controlling question of law is an issue of "pure law" that can be decided "quickly and cleanly without having to study the record." *Id.* The question must also "be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Id.* at 1259. By contrast, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact

or whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* at 1259.

*Cont'l 332 Fund, LLC v. Albertelli*, No. 2:17-cv-41-FtM-38MRM, 2018 WL 3656472, at *2 (M.D. Fla. Aug. 2, 2018).

With respect to the second element under § 1292(b), where the appellate court is in "complete and unequivocal" agreement with the district court, a "substantial ground for difference of opinion" does not exist. *McFarlin*, 381 F.3d at 1258 (quoting *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 788-89 (11th Cir. 1992)). Moreover, questions of first impression or the absence of binding authority on an issue, without more, are insufficient to demonstrate a substantial ground for difference of opinion. *See In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *Williams v. Saxon Mortgage Co.*, No. CIV. A. 06-0799-WS-B, 2007 WL 4105126, at *2 (S.D. Ala. Nov. 15, 2007) (citations omitted). Instead, the district court should measure the weight of opposing arguments to the disputed ruling in deciding whether there is a "substantial ground for dispute." *In re Flor*, at 284.

The final requirement that the controlling question of law "may materially advance the ultimate termination of the litigation" is a straightforward one. This inquiry simply requires an examination of whether the "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259.

The Eleventh Circuit has "identifie[d] several principles to guide [courts] in when deciding whether to exercise [their] discretion under § 1292(b) to allow for a rare interlocutory appeal." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018) (citing *McFarlin*, 381 F.3d at 1264).

> In general, [courts] exercise [their] discretion only when (1) the appeal presents a pure question of law, (2) the question is controlling of at least a substantial part of the case, (3) the district court identifies the question in its order, (4) there are

> substantial grounds for differences of opinion on the question, and (5) resolution of
> the question may reduce the amount of litigation necessary on remand.

*Id.* (citing *McFarlin*, 381 F.3d at 1264). "This standard is conjunctive, meaning that if any elements are not satisfied, the Court must deny interlocutory review." *In re Yormak*, No. 2:17-cv-73-FtM-38, 2017 WL 2645601, at *2 (M.D. Fla. June 19, 2017) (citation omitted). Acknowledging the profound hurdles that parties face in seeking interlocutory appeal, the Eleventh Circuit has characterized this certification as a "high threshold," and stated that "[m]ost interlocutory orders do not meet this test." *OFS Fitel, LLC*, 549 F.3d at 1359. Ultimately, "§ 1292(b) certification is wholly discretionary with both the district court and [the Court of Appeals]." *Id.* at 1358.

## III. DISCUSSION

In its Motion, Defendant Audi requests that the following questions be certified for interlocutory appeal:

1. Whether § 48.193(1)(a)6 of Florida's long-arm statute "requires a causal connection between a defendant's contacts with Florida and the plaintiff's injury as a prerequisite for exercising specific jurisdiction[,]"; and

2. "[W]hether a court can consider the conduct of an independent U.S. distributor to determine that the exercise of specific jurisdiction over a foreign manufacturer comports with due process."

Motion at 1-2. The Court considers each element under § 1292(b) with respect to the two questions for certification posed by Defendant Audi.

### A. § 48.193(1)(a)(6)'s Connexity Requirement

The Court first analyzes whether Defendant Audi's first question meets § 1292(b)'s high threshold.

#### i. Controlling Question of Law

Defendant Audi has demonstrated that whether Florida's long-arm statute requires a casual connection between a defendant's contacts with Florida and the plaintiff's injury for the purpose

5

of establishing specific jurisdiction presents a controlling question of law. That question pertains to the meaning of a statutory provision, namely, § 48.193(1)(a)(6) of Florida's long-arm statute. The question is also controlling, as finding that such a causal connection is required—and that Defendant Audi lacks any such causal connection to the forum—would eliminate Defendant Audi from the present action for lack of personal jurisdiction.

Plaintiff argues this question cannot be properly characterized as a controlling question of law because it cannot be resolved "without at least some inquiry into the factual record." Response at 4. Defendant Audi's question can be answered without the need to study the record, however. A reviewing court simply needs to review the basic facts pertinent to the exercise of personal jurisdiction over Defendant Audi. Moreover, whether § 48.193(1)(a)(6) confers specific jurisdiction absent a casual connection between Defendant Audi's contacts with Florida and the Plaintiff's injury is stated at a sufficiently high level of generality to preclude the need to know the underlying details of the present action. That question is also of value to other courts, as the limits of Florida's long-arm statute for purposes of establishing specific jurisdiction has significant precedential value.

Plaintiff provides authorities to support its argument that Defendant Audi's question is not a controlling question of law, but those authorities found that extensive review of the factual record was required to answer the fact-intensive questions at issue. *Mediaset Espana Comunicacion, S.A. v. Romay*, 2022 WL 1643835, at *2 (S.D. Fla. May 24, 2022); *Knepfle v. J-Tech Corp.*, 2020 WL 1974225, at *1 (M.D. Fla. Apr. 24, 2020); *PFM Air, Inc. v. Dr. Ing. HC. F. Porsche A.G.*, 751 F. Supp. 2d 1264, 1269 (M.D. Fla. Oct. 7, 2010). The remaining authorities cited by Plaintiff found that the questions presented for interlocutory appeal were merely fact-specific inquiries with no meaningful precedential value. *See In re U.S. Oil & Gas Litig.*, No. 83-1702-A1-CIV., 1988 WL

28544 at *30 (S.D. Fla. Feb. 8, 1988) (whether Florida's long-arm statute encompasses "contracts of annuity" as "contracts of insurance" is a "fact-specific personal jurisdiction decision"); *see also Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 304 (W.D. Ky. 2017) ("framing the exact factual situation of this case as an important and unresolved question of whether personal jurisdiction exists" fails to pose a controlling issue of law). Here, Defendant Audi's question implicates the necessary causal connection between Plaintiff's injury and the nature of Defendant's contacts with the forum. This question is one of general applicability, not a fact-specific question framed at a higher level of generality. Defendant Audi has accordingly established the first element for leave to file an interlocutory appeal.

### ii. Substantial Ground for Difference of Opinion

Defendant Audi argues that there is substantial ground for difference of opinion on its first question because several courts have interpreted § 48.193(1)(a)(6)'s connexity requirement differently. Defendant Audi contends that numerous decisions have interpreted § 48.193(1)(a)(6) as failing to establish personal jurisdiction in similar circumstances. Plaintiff responds that Defendant Audi fails to identify any authority that held or even supports its proposed interpretation of § 48.193(1)(a)(6). Defendant Audi replies that numerous cases support its interpretation of § 48.193(1)(a)(6), and that Plaintiff has failed to demonstrate otherwise.

The Court finds that Defendant Audi fails to demonstrate that there is substantial ground for difference of opinion regarding the proper interpretation of § 48.193(1)(a)(6)'s connexity requirement. As noted, to demonstrate that a substantial ground for difference of opinion exists, Defendant Audi must show that this question is (1) difficult and of first impression; (2) district courts are split as to the issue; or (3) the circuits are split on this issue. *Cont'l 332 Fund, LLC*, 2018 WL 3656472, at *2. Defendant Audi does not argue that this issue is one of first impression, nor

does Defendant Audi demonstrate any circuit split on this issue. Instead, Defendant Audi argues that there is substantial ground for difference of opinion because several Florida appellate courts and district courts have interpreted § 48.193(1)(a)(6)'s connexity requirement differently. However, Defendant Audi is incorrect that those decisions reached a contrary interpretation of § 48.193(1)(a)(6).

First, Defendant Audi points to the plain language of § 48.193(1)(a)(6) and dicta from the Supreme Court of Florida and the Eleventh Circuit to argue that § 48.193(1)(a)(6)—like all provisions of Florida's long-arm statute—requires a causal connection between a defendant's activity in Florida and the plaintiff's injury. But Defendant Audi's appeals to those general statements fails to establish a substantial ground for difference of opinion on the proper interpretation of § 48.193(1)(a)(6). *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022) ("Specific jurisdiction under § 48.193(1) 'requires a connection or "connexity" between the enumerated activity in Florida and the cause of action.'") (quoting *Aegis Def. Servs., LLC v. Gilbert*, 222 So. 3d 656, 661 (Fla. 5th DCA 2017); *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (noting that the "predicate finding" that a tortious act was committed in Florida "is necessary because of the connexity requirement contained in section 48.193(1).") (citation omitted). Defendant Audi's emphasis of § 48.193(1)'s connexity requirement also fails to demonstrate that there is substantial ground for difference of opinion on its proper application. Defendant Audi's observation that "[c]ases interpreting the long-arm statute confirm that the connexity requirement applies to *all* of the enumerated acts" in § 48.193(1), including introducing products into the stream-of-commerce under § 48.193(1)(a)(6), similarly misses the mark.

Despite Defendant Audi's argument to the contrary, the Court's Order did not exempt § 48.193(1)(a)(6) from § 48.193(1)'s general connexity requirement. Section 48.193(1)(a)(6)

requires a causal connection between Defendant Audi's activity and Florida, which in turn requires showing that Defendant Audi was either "engaged in solicitation or service activities within this state" or that "[p]roducts, materials, or things processed, serviced, or *manufactured by the defendant anywhere* were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. Ann. § 48.193(1)(a)(6)(a)-(b) (emphasis added). As the plain language of that provision makes clear, the causation requirements under § 48.193(1)(a)(6)(a), the "doing business" prong, and § 48.193(1)(a)(6)(b), the "products liability" prong, are distinct. The Court noted that distinction in its Order. *See* ECF No. [57] at 8 ("Unlike the 'doing business' prong of Florida's long arm statute, which requires a causal connection between the defendant's activities in Florida and the plaintiff's injury, the 'products liability' prong has no such requirement.") (citation omitted).

The "doing business" prong requires showing that a defendant's activity in the forum state *caused* the plaintiff's injury, whereas the "products liability" prong requires showing that a defendant's manufacture of a product, material, or other processed good caused the plaintiff's injury "in the ordinary course of commerce, trade, or use" regardless of where the product was manufactured. Fla. Stat. Ann. § 48.193(1)(a)(6)(b). In short, the "products liability" prong contains no causal requirement that the activity that led to Plaintiff's injury—the design and manufacture of a vehicle—must be the same activity enabling the Court's exercise of personal jurisdiction over Defendant Audi, namely, substantial sale and marketing of Defendant Audi's vehicles. The authorities provided by Defendant Audi on this point are accordingly inapposite. Consistent with those decisions, the Court applied § 48.193(1)'s connexity requirement to § 48.193(1)(a)(6)(b). *See Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1137 (Fla. 3d DCA 2018); *D-I Davit Inte'l-Hische GMBH v. Carpio*, 346 So. 3d 197, 201 (Fla 3d DCA 2022); *see also Caiazzo*

*v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011) ("Specific personal jurisdiction exists when the alleged activities or actions of the defendant are directly connected to the forum state."); *Imerys Talc Am., Inc. v. Ricketts*, 262 So. 3d 799, 802 (Fla. 4th DCA 2018) (same).

Defendant Audi attempts to insert the "doing business" prong's causal requirement—that Defendant Audi's activities in Florida caused Plaintiff's injury—into the "stream-of-commerce" prong. But as the plain language of the provision makes clear, the stream-of-commerce prong has no such causal requirement. Defendant Audi's remaining arguments effectively relitigate the Court's ruling on personal jurisdiction rather than demonstrate a substantial ground for difference of opinion.

Defendant Audi argues that the decisions in *Piazenko v. Pier Marine Interiors GBH*, 314 So. 3d 438 (Fla. 3d DCA 2020), *Almond v. Coloplast A/S*, 8:20- CV-731-WFJ-AEP, 2021 WL 2042659 (M.D. Fla. May 21, 2021), and *Volkswagen Aktiengesellschaft v. Jones*, 227 So. 3d 150 (Fla. 2d DCA 2017) demonstrate a substantial ground for difference of opinion on the proper interpretation of § 48.193(1)(a)(6)(b). In *Piazenko*, the court simply noted that § 48.193(1)(a) "requires a causal connection between the defendant's activities in the forum state and the plaintiff's cause of action." *Piazenko*, 314 So. 3d 438 at 444. The Court then determined that the plaintiff failed to show that the defendant "committed a tort in Florida[,]" and the defendants' "contacts with the state evidence no connection with the alleged causes of action necessary to establish specific jurisdiction over him[]" under either § 48.193(1)(a)(2) or the "doing business" prong of § 48.193(1)(a)(6). *Id.* Unlike in *Piazenko*, Plaintiff showed that Defendant Audi allegedly committed a tort in Florida and has sufficient minimum contacts with the state. Personal jurisdiction was proper under the "products liability" prong of the long-arm statute, a provision not at issue in *Piazenko*.

Case No. 22-cv-21585-BLOOM/Otazo-Reyes

In *Almond v. Coloplast*, 2021 WL 2042659 at *3-4, the court found that exercising personal jurisdiction under the "products liability" prong of § 48.193(1)(a)(6)(b) was improper because the defendant "never manufactured" nor "processed or serviced" medical device products in the United States. The court determined that the plaintiff failed to establish that the defendant "processed, serviced, or manufactured" the medical device in question and that personal jurisdiction was therefore improper under § 48.193(1)(a)(6)(b). *Id.* In reaching its conclusion, the court in *Almond* emphasized that "this is not a case where the defendant made the product at issue and put it into the stream of commerce." *Almond*, 2021 WL 2042659 at *5. Unlike in *Almond*, Plaintiff here has alleged that Defendant Audi manufactured and designed the vehicle that led to his injury, and that Defendant Audi intentionally inserted its vehicles the into the stream of commerce. Moreover, Plaintiff showed that Defendant Audi's contacts with the Florida market demonstrate its awareness that its vehicles would be present in this forum. As the Court's Order explains, Plaintiff accordingly satisfied § 48.193(1)(a)(6)(b)'s requirement that Defendant Audi "processed, serviced, or manufactured" the product that led to Plaintiff's injury in Florida.

Finally, Defendant Audi relies on *Jones* to argue that Plaintiff's unilateral activity—driving his vehicle from California to Florida—renders the exercise of personal jurisdiction improper. But the court found that personal jurisdiction was absent in *Jones* because the plaintiff failed to show that the defendant had "sufficient minimum contacts with Florida[,]" and "nothing in the record indicate[d] that the replacement brakes" at issue were even manufactured by the defendant. *Jones*, 227 So. 3d 150 at 158-59. The court's dicta explaining that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction[]" fails to establish a substantial ground for difference of opinion. *Id.* at 158 (quoting *Helicopteros Nacionales de*

11

*Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). This language applies to whether a defendant has sufficient minimum contacts with the forum state. It does not address § 48.193(1)(a)(6)(b) at all, let alone its connexity requirement. Moreover, Plaintiff established that Defendant Audi had minimum contacts with Florida without resort to Plaintiff's unilateral activity.

In sum, the cases Defendant Audi relies on are consistent with this Court's interpretation of § 48.193(1)(a)(6)(b) and accordingly fail to demonstrate a substantial ground for difference of opinion. Defendant Audi's remaining arguments simply disagree with the Court's reasoning. Defendant Audi's attempt to cast doubt on the Court's reliance on *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) falls short. Defendant Audi is correct that the Supreme Court did not interpret Florida's long-arm statute in *Ford Motor Co.* For the reasons explained above, this observation fails to demonstrate that the Court's interpretation of § 48.193(1)(a)(6)(b)'s causal requirement is inconsistent with *any* authorities.

Defendant Audi also unconvincingly argues that the Fifth Circuit's 1981 opinion in *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236 (5th Cir. 1981) fails to support the Court's interpretation. *Mallard* squarely held that a prior version of Florida's long-arm statute was intended to "reach out-of-state manufacturers in products liability actions." 634 F.2d at 242. The Court then observed "[w]here, for example, a car has been repaired out-of-state and some time later the repairs fail during an in-state sojourn causing injury, personal jurisdiction over the out-of-state repairman is concededly present under this statute." *Id.* Defendant Audi protests that both *Mallard* and the decision it relied on found that personal jurisdiction was absent and *Mallard* conflicts with the cases discussed above. Yet *Mallard* found personal jurisdiction was absent because the plaintiff never used or consumed any product within the meaning of the "products liability" prong. As such, *Mallard* is consistent with the analysis set forth in the Court's Order.

Defendant Audi has accordingly failed to demonstrate that a substantial ground for difference of opinion exists with respect to the Court's interpretation of § 48.193(1)(a)(6)(b). The authorities Defendant Audi provides instead confirm that the Court "properly applied settled law to the facts or evidence of a particular case." *Cont'l 332 Fund, LLC v. Albertelli*, 2018 WL 3656472, at *2. Defendant Audi has accordingly failed to clear the "high threshold" necessary to certify this question for interlocutory appeal. *OFS Fitel, LLC*, 549 F.3d at 1359.

### iii. Materially Advance the Ultimate Termination of the Litigation

Defendant Audi has also failed to demonstrate that certifying this question for interlocutory appeal would "materially advance the ultimate termination of the litigation." *McFarlin*, 381 F.3d at 1259. Defendant Audi is correct that an interlocutory appeal of this question—and a subsequent finding that personal jurisdiction cannot be properly asserted against Defendant Audi—would reduce the overall burdens of litigation by eliminating Defendant Audi, thus reducing overall discovery and issues that must ultimately be resolved. However, Defendant Audi fails to show that certifying Defendant Audi's question "would serve to avoid a trial or otherwise substantially shorten the litigation[,]" however. *Id.* The Court instead finds that "an interlocutory appeal of this derivative issue would not advance, but would rather delay the litigation and would benefit only Defendant [Audi] …." *In re U.S. Oil & Gas Litig.*, 1988 WL 28544 at * 31. Defendant Audi has therefore failed to establish the third element permitting the certification of an interlocutory appeal.

### B. Personal Jurisdiction

As noted above, Defendant Audi's second question asks "whether a court can consider the conduct of an independent U.S. distributor to determine that the exercise of specific jurisdiction over a foreign manufacturer comports with due process." Motion at 1-2. The Court proceeds to determine if this question meets § 1292(b)'s high threshold.

Case No. 22-cv-21585-BLOOM/Otazo-Reyes

### i. Controlling Question of Law

As with its first question, Defendant Audi has shown that whether the conduct of an independent U.S. distributor is a proper basis for exercising specific jurisdiction over a foreign manufacturer presents a controlling question of law. That question is plainly of value to other courts, as the limits of the exercise of personal jurisdiction over foreign manufacturers raises a fundamental jurisdictional question. The question is also stated at a high enough level of generality to preclude a detailed examination of the factual record. As explained above, the authorities relied on by Plaintiff to oppose the certification of both of Defendant Audi's questions either found that the question at issue was either intensely fact-specific or was of little precedential value. Here, Defendant Audi presents a jurisdictional question that suffers from neither defect.

### ii. Substantial Ground for Difference of Opinion

Although Defendant Audi presents a controlling question of law, Defendant Audi fails to show that there is a substantial ground for difference of opinion. Defendant Audi quarrels with the Court's reasoning in finding that Plaintiff demonstrated sufficient minimum contacts enabling the Court's exercise of personal jurisdiction over Defendant Audi. As with its first question, Defendant Audi fails to show that any underlying conflict exists justifying the certification of its second question for interlocutory appeal.

The Court's Order relied on the Supreme Court's decisions in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) to reject Defendant Audi's argument that it has insufficient minimum contacts with the Florida market to establish personal jurisdiction over Defendant Audi. The Court explained that "[t]he Supreme Court in *Ford* reiterated that personal jurisdiction is conferred over a manufacturer that 'serve[s], directly or indirectly, the market' in the forum state."

14

Order at 10 (quoting *Ford*, 141 S. Ct. at 1027 (quoting *World-Wide Volkswagen*, 444 U.S. at 297)). The Court also noted that the Supreme Court specifically referred to "the Audi/Volkswagen scenario as a paradigm case of specific jurisdiction." *Id.* (quoting *Ford*, 141 S. Ct. at 1027-28). Consistent with *Ford* and *World-Wide Volkswagen*, the Court accordingly found that it has personal jurisdiction over Defendant Audi, as Plaintiff showed that Defendant Audi indirectly serves the Florida market.

Here, Defendant Audi argues that neither *Ford* nor *World-Wide Volkswagen* "involved a foreign manufacturer and neither case imputed the conduct of a U.S. distributor to the foreign manufacturer." Motion at 11. Defendant Audi observes that the Court's Order does not cite the Supreme Court's decisions in *Asahi Metal Industries Co. v. Superior Court of California.*, 480 U.S. 102 (1987) and *J. McIntyre Machines, Ltd. v. Nicastro*, 564 U.S. 873 (2011). Defendant Audi contends that the Court's "application of *Ford Motor* and [*World-Wide Volkswagen*] is in tension with *J. McIntyre's* focus on the *manufacturer's* conduct towards the forum, as opposed to the sales activities of the U.S. distributor." *Id.* at 12 (citing *J. McIntyre Machines, Ltd.*, 564 U.S. at 886) (emphasis in original).

Defendant Audi's argument fails to show that a substantial ground for difference of opinion exists on whether the conduct of an independent U.S. distributor is a proper basis for exercising specific jurisdiction over a foreign manufacturer. The Court's Order found that Defendant Audi, at minimum, indirectly serves the Florida market. Consistent with *Ford* and *World-Wide Volkswagen*, the Court concluded that exercising personal jurisdiction over Defendant Audi was thus proper. Defendant Audi does not take issue with that finding directly. Instead, Defendant notes that the Court did not also discuss the Supreme Court's decisions in *Asahi Metals* and *J. McIntyre*. But this fails to show any ground for difference of opinion. Defendant Audi's bare

assertion that the Court's application of *Ford* and *World-Wide Volkswagen* "is in tension with *J. McIntyre's* focus on the *manufacturer's* conduct towards the forum" similarly fails to show any ground for substantial difference of opinion. Motion at 12. Defendant Audi provides no authority interpreting those decisions in a contrary manner. There is accordingly no basis for certifying Defendant Audi's question for interlocutory appeal in the absence of any authority demonstrating a difference of opinion on this issue.

Defendant Audi next relies on numerous decisions to argue that "the Court's understanding of the 'indirectly serving the market' language from *Ford Motor* and [*World-Wide Volkswagen*] cannot be reconciled with a large number of cases holding that, for purposes of establishing jurisdiction, a court cannot impute the sales activities of a distributor (or other affiliated company) to the manufacturer unless the plaintiff can pierce the corporate veil by establishing an alter ego or agency theory." Motion at 12. The cases Defendant Audi provides in support of this argument are inapposite, however. In those cases, the courts considered whether exercising personal jurisdiction was proper based on a theory of general jurisdiction. Here, the Court's Order conversely determined that personal jurisdiction over Defendant Audi is proper through the exercise of specific jurisdiction, not general jurisdiction.

Defendant Audi's reliance on the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), is misplaced. *Daimler* aptly illustrates this critical distinction. As relevant here, the Supreme Court explained:

> *International Shoe* distinguished between, on the one hand, exercises of specific jurisdiction, as just described, and on the other, situations where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U.S., at 318, 66 S.Ct. 154. As we have since explained, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render

16

> them essentially at home in the forum State." *Goodyear,* 564 U.S., at ——, 131 S.Ct., at 2851; *see id.,* at ——, 131 S.Ct., at 2853–2854; *Helicopteros,* 466 U.S., at 414, n. 9, 104 S.Ct. 1868.

*Id.* at 128 (footnote call number omitted). As Defendant Audi observes, the Supreme Court then noted that "several Courts of Appeals have held[] that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego" for the purpose of subjecting a foreign corporation "to a court's general jurisdiction based on the contacts of its in-state subsidiary." *Id.*

Here, the Court's Order determined that exercising specific jurisdiction over Defendant Audi is proper because Defendant Audi indirectly serves the Florida market in such a manner as to permit the exercise of personal jurisdiction based on its minimum contacts with this forum. The Court did not exercise general jurisdiction over Defendant Audi, nor did it suggest that it could do so by imputing an in-state subsidiary's conduct to Defendant Audi as its foreign parent company. The authorities provided by Defendant Audi are accordingly inapposite. In each, personal jurisdiction was lacking over the defendant because there was an insufficient agency relationship between a subsidiary and the defendant, a foreign parent company.[1]

Defendant Audi accordingly fails to demonstrate that substantial ground for difference of opinion exists regarding its second question. Defendant Audi has not shown that *any* courts have

---

[1] *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1291-92 (11th Cir. 2022); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, CV 17-13544, 2021 WL 1207476, at *3 (D.N.J. Mar. 31, 2021); *Volkswagen Aktiengesellschaft v. Jones*, 227 So. 3d 150, 158-59 (Fla. 2d DCA 2017); *Schwartzberg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012); *Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 119-20 (Fla. 3d DCA 2011); *Am. Exp. Ins. Services Europe Ltd. v. Duvall*, 972 So. 2d 1035, 1039 (Fla. 3d DCA 2008); *Dev. Corp. of Palm Beach v. WBC Constr., L.L.C.*, 925 So.2d 1156, 1162 (Fla. 4th DCA 2006); *State v. Am. Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th DCA 1998); *Qualley v. Int'l Air Serv. Co., Ltd.*, 595 So. 2d 194, 196 (Fla. 3d DCA 1992).

disagreed with the Court's straightforward application of *Ford* and *World-Wide Volkswagen* to the present action.

### iii. Materially Advance the Ultimate Termination of the Litigation

As with its first question, Defendant Audi has also failed to show that resolving this question would materially advance the ultimate termination of the litigation. Defendant Audi provides the same reasoning for its second question, namely, that resolving this question could eliminate Defendant Audi from this action, saving time and expense for all parties. As explained above, Defendant Audi has not shown that removing it from the present action would materially advance the ultimate termination of the litigation. Instead, waiting to litigate Plaintiff's claims until after resolution of an interlocutory appeal would delay rather than advance the ultimate resolution of the present action. Defendant Audi has accordingly also failed to satisfy the third element permitting the certification of an interlocutory appeal.

Based on the discussion above, the Court finds that Defendant Audi has failed to meet its heavy burden of establishing that an interlocutory appeal is warranted here. Accordingly, the two issues presented for certification do not merit deviation from the general principle that appeals should be conducted after final judgment. *See McFarlin v. Canseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Audi's Motion to Amend Order on Motion to Dismiss to Include a Certification for Interlocutory Appeal, ECF No. [61], is **DENIED**.

Case No. 22-cv-21585-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 13, 2023.

　

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record